J-A13014-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN RE: R.H., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: L.H., NATURAL MOTHER | No. 1903 WDA 2014 |

Appeal from the Order October 21, 2014
in the Court of Common Pleas of Allegheny County
Orphans' Court, at No(s): TPR 017-14

| | |
|---|---|
| IN RE: K.B., A MINOR, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: L.H., NATURAL MOTHER | No. 1904 WDA 2014 |

Appeal from the Order October 21, 2014
in the Court of Common Pleas of Allegheny County
Orphans' Court, at No(s): TPR 018-14

| | |
|---|---|
| IN RE: L.H., A MINOR, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: L.H., NATURAL MOTHER | No. 1905 WDA 2014 |

Appeal from the Order October 21, 2014
in the Court of Common Pleas of Allegheny County
Orphans' Court, at No(s): TPR 019-14

BEFORE:  PANELLA, J., SHOGAN, J., and OTT, J.

MEMORANDUM BY PANELLA, J.                     **FILED JULY 27, 2015**

L.H. ("Mother") appeals from the orders entered on October 21, 2014, in the Court of Common Pleas of Allegheny County, involuntarily terminating her parental rights to her female child, L.H., born in April 2006, to her female child, R.H., born in September 2007, and to her female child, K.B.,

born in August 2009, (collectively "the Children"), pursuant to 23 Pa.C.S.A. § 2511(a)(2), (8), and (b).[1]  We affirm.

The record reveals the relevant factual and procedural history, as follows.  Mother is the natural mother of L.H., R.H., and K.B.  The Allegheny County Office of Children, Youth, and Families ("CYF") became familiar with the family in 2011, when Mother was involved in an accident and became homeless.  Mother spent time in the hospital as well as with the Children in hotels and in the home of her mother.  At the time, Mother admitted to a history of drug and alcohol abuse and mental health issues.  CYF assisted the family with intervention and services, and the case was closed on October 19, 2011.

CYF became involved again with the family on January 2, 2012. Mother once again admitted to her history of drug and alcohol abuse and mental health concerns, and Mother reported that she had been charged with vehicular homicide because of a car accident in 2011.  Mother offered a friend, L.P., as a potential placement resource for the Children.  As the case against Mother was screened out, no action was taken by CYF.

---

[1] J.H., who was married to Mother from July 14, 2002 to September 7, 2010, is the father of L.H. and R.H.  J.B., who signed an acknowledgment of paternity on September 23, 2009, is the father of K.B.  J.H. filed consolidated concurrent appeals at 1922 WDA 2014 and 1923 WDA 2014 in regard to the involuntary termination of his parental rights to L.H. and R.H., of which we dispose in a separate memorandum.  J.B. did not file an appeal in regard to the termination of his parental rights to K.B.

In March 27, 2012, CYF again became involved with the family due to concerns regarding the placement of the Children with Maternal Grandmother. Mother had previously alleged that Maternal Grandmother had been abusive to Mother as a child, and Mother was struggling with her ongoing drug and alcohol addiction and her mental health issues. CYF was unable to reach Mother for eleven days, and, on March 30, 2012, CYF removed the Children from Maternal Grandmother's home by CYF and placed them in foster care.

Mother was incarcerated at the Allegheny County Jail from April 8, 2012 until April 17, 2012, due to a domestic dispute with her paramour. Following her release, Mother was hospitalized due to injuries she received during the altercation with her paramour. The Children's fathers were not located at the time, and thus were not considered as placement options. CYF filed Petitions for Dependency and the orphans' court adjudicated the Children dependent on May 24, 2012. The Children were placed in the care of L.P., ("Foster Mother") where they remain to date.

A Family Service Plan ("FSP") was developed for Mother. Mother's goals were to achieve and maintain recovery from drug and alcohol problems; stabilize her mental health; complete a domestic violence prevention program; supervise the Children at all times; maintain contact and cooperate with CYF and service providers; maintain visitation with the Children; obtain and maintain housing and ensure supervision of the Children; and refrain from criminal activity; and address legal obligations.

Mother pled guilty to vehicular homicide, involuntary manslaughter, DUI, and four related traffic violations because of the car accident in January 2011. On June 15, 2013, Mother was incarcerated to serve her sentence at SCI-Muncy. Mother was granted parole on September 15, 2014, with an effective date of on or after November 11, 2014. Prior to her incarceration at SCI Muncy, Mother had been arrested and incarcerated five times.

At the termination hearing, the orphans' court heard testimony from CYF Adoption/Direct Service Caseworker, Wendy Lyons, Neil Rosenblum, Ph.D., J.H., Mother, J.B., and Catholic Charities Worker, Mary Beth Paterno. Ms. Lyons testified concerning Mother's use of cocaine, addiction to pain medication, and Mother's alcohol-related vehicular homicide case. Mother had participated in a number of drug and alcohol treatment programs prior to her incarceration. These programs included Crisis, Gateway, Power, Holy Family Services, Cove Forge, and Turning Point. None worked.

It was not until Mother entered a drug and alcohol treatment program at SCI-Muncy that she was able to achieve sobriety. Mother had never demonstrated any sustained period of sobriety outside this type of structured residential setting.

Mother was also ordered to stabilize her mental health. She admitted that she had a history of mental health issues dating back to her teens and had been more recently diagnosed with severe depression and post-traumatic stress disorder. Mother attended counseling at the Irene Stacey Treatment Clinic from 2008 until 2011 inconsistently. Mother was asked to

- 4 -

reconnect with the agency, but did not do so. Mother was also an inpatient at the Irene Stacey Treatment Center in Butler from December 16, 2012 until December 18, 2012.

The CYF record reflected that there has been domestic violence throughout the history of the case. Mother had a PFA against J.H. in August 2007, and Mother went to jail in 2012, due to a domestic violence dispute. Under her FSP, Mother was mandated to enroll and complete a domestic violence prevention program, a task she did not complete until June 2, 2014, while in prison.

On January 8, 2013, Dr. Rosenblum evaluated Mother. He found that she had started abusing drugs at the age of thirteen and continued into her adulthood. Dr. Rosenblum became aware of Mother's long history of mental health problems, arrests and incarcerations, dysfunctional relationships with men and personality disorders. Dr. Rosenblum's prognosis for Mother being able to alter her lifestyle and to improve in the areas of her adjustment is very guarded at best. Dr. Rosenblum's prognosis for reunification is guarded.

On January 8, 2013, Dr. Rosenblum also completed an evaluation of Foster Mother and the Children. In Dr. Rosenblum's opinion, Foster Mother has done an outstanding job. He found that a strong bond exists between the Children and Foster Mother. Dr. Rosenblum testified that termination of Mother's parental rights will have a positive value in this case. In Dr. Rosenblum's opinion, adoption is the permanency goal that will provide the

Children with continuity of care and the opportunity to progress in their adjustment in the supportive environment provided by Foster Mother.

On February 7, 2014, CYF filed Petitions for Involuntary Termination of Parental Rights of Mother to the Children. Mother was officially served the petition on February 21, 2014, while incarcerated at SCI-Muncy. The orphans' court held hearings on July 11, 2014 and October 10, 2014. On October 21, 2014, the orphans' court entered orders terminating Mother's parental rights to the Children.

On November 18, 2014, Mother filed timely notices of appeal, along with concise statements of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). This Court *sua sponte* consolidated Mother's appeals at 1903 WDA 2014, 1904 WDA 2014, and 1905 WDA 2014.

Mother raises a single claim for our review: "Whether the trial court abused its discretion and/or erred as a matter of law in concluding that termination of natural mother's parental rights would serve the needs and welfare of the Children pursuant to 23 Pa.C.S.A. §2511(b)?" Mother's Brief at 9.

We consider Mother's claim mindful of our well-settled standard of review.

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an

abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Termination of parental rights is governed by Section 2511 of the Adoption Act, 23 Pa.C.S.A. §§ 2101-2938, which requires a bifurcated analysis.

Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

In this case, the orphans' court terminated Mother's parental rights pursuant to sections 2511(a)(2), (8), and (b), which provide as follows.

**(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

\*\*\*

- 7 -

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

\*\*\*

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

\*\*\*

**(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(2), (8), and (b).

Mother concedes that there is competent, clear and convincing evidence in the record to support the orphans' court's termination of her parental rights under Sections 2511(a)(2) and (8). On appeal, Mother presents no argument with respect to Section 2511(a). Thus, she has waived any challenge to the sufficiency of the evidence with regard to

Section 2511(a). *See Chapman-Rolle v. Rolle*, 893 A.2d 770, 774 (Pa. Super. 2006).

We next review the termination orders pursuant to Section 2511(b), which focuses on whether the termination of Mother's parental rights would best serve the developmental, physical, and emotional needs and welfare of the Children.

With respect to the bond analysis pursuant to Section 2511(b), our Supreme Court confirmed that, "the mere existence of a bond or attachment of a child to a parent will not necessarily result in the denial of a termination petition." *In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013). The *T.S.M.* Court quoted with approval, as follows.

> [A]s Judge Tamilia eloquently observed while speaking for the [Superior] court, it is "an immutable psychological truth" that "[e]ven the most abused of children will often harbor some positive emotion towards the abusive parent." *In re K.K.R.-S.*, 958 A.2d 529, 535 (Pa. Super. 2008). Thus, Judge Tamilia cautioned against denying termination of parental rights based solely on the fact that a child has an attachment to the parent: "The continued attachment to the natural parents, despite serious parental rejection through abuse and neglect, and failure to correct parenting and behavior disorders which are harming the children cannot be misconstrued as bonding." *Id*. at 535 (quoting *In re Involuntary Termination of C.W.S.M.*, 839 A.2d 410, 418 (Pa. Super. 2003) (Tamilia, J., dissenting)).

*In re T.S.M.*, 71 A.3d at 267 (footnote omitted). Further, the *T.S.M.* Court observed "[c]hildren are young for a scant number of years, and we have an obligation to see to their healthy development quickly. When courts fail . . .

the result, all too often, is catastrophically maladjusted children." *Id*. at 269.

In the instant case, the orphans' court found that the Children have a strong bond with Mother. However, it noted that its recognition of the bond between Mother and the Children does not end the court's inquiry. The orphans' court looked to Dr. Rosenblum's testimony that the Children have experienced considerable stress, confusion, and trauma stemming from Mother's inability to care for them. Evidence showed that Mother had been incarcerated since 2013 after pleading guilty to vehicular homicide and numerous other charges related to the 2011 alcohol-related motor vehicle collision.

In addition, prior to Mother's incarceration, she failed to follow through with much needed substance abuse and mental health treatment. The two older children have also stated that they feel safer with Foster Mother, and that Foster Mother takes care of them better than anyone else. Dr. Rosenblum opined in his reports and testimony that the Children need stability in their lives and that the termination of Mother's parental rights will benefit the Children by ensuring that their need for stability, safety, predictability and security is fulfilled.

We find that there was competent evidence to support the orphans' court's decision that termination of Mother's parental rights best serves the Children's developmental, physical, and emotional needs and welfare. Thus,

we discern no abuse of discretion or error of law as to its termination of Mother's parental rights pursuant to Section 2511(b).

Accordingly, we affirm the orphans' court's orders terminating Mother's parental rights to Children.

Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/27/2015